In the Matter of the Claim of Samuel Elkin, Appellant, *v.* D. & J. Cleaners, Inc., et al., Respondents. Workmen's Compensation Board, Respondent.

Third Department, November 22, 1961.

*Krieger & Scheinman* (*Louis B. Scheinman* of counsel), for appellant.

*Ralph S. Stowell* for D. &. J. Cleaners, Inc., and another, respondents.

*Louis J. Lefkowitz, Attorney-General,* for Workmen's Compensation Board, respondent.

BERGAN, P. J.  Claimant was employed as a presser.  It is undisputed that he worked about 10 hours a day, six days a week, and that most of this time he was standing on his feet. He began his work for the employer in 1949 and, with exception of a very short period in 1952, he was continuously employed until 1956.

The proof is undisputed that he developed varicose veins while in this employment; and that before starting on this job he had no symptoms of varicose veins.  After four years of this work for the employer, claimant noticed pain and discomfort in his legs and feet, and in 1953 this condition was first diagnosed as varicose veins.  In 1956 he left his job because of severe pains. Medical proof discloses he had bilateral varicose veins.

Although there are inherent or hereditary conditions in the body which predispose some persons, but not all persons, to the incidence of varicose veins, as there are also inherent or hereditary conditions which predispose some persons, but not everyone, to such conditions as Dupuytren's contracture, it has been several times held in New York as a matter of law that varicose veins can constitute an occupational disease where medical proof sufficiently associates the occurrence of the disease with the work.  (*Matter of Wildermuth* v. *B. P. O. Elks Club,* 5 A D 2d 911, motion for leave to appeal denied 4 N Y 2d 677; *Matter of Vines* v. *Lazar Motors, Inc.,* 277 App. Div. 1083.)

It seems clear that in *Matter of Nussbaum* v. *Mercury Messenger Corp.* (7 A D 2d 673), which was a claim based on varicose veins the dismissal of which by the board was affirmed here, the board when it made its decision November 16, 1956 felt that all varicose vein cases had been interdicted by *Matter of Detenbeck* v. *General Motors Corp.* (309 N. Y. 558).  The board's memorandum of decision stated that " To establish a compensable claim, there must be a recognizable link between the disease and some distinctive feature of the claimant's job. This test is not met where disability is caused by an aggravation of a condition which is not occupational in nature." (*Matter of Detenbeck* v. *General Motors Corp.,* 309 N. Y. 558.)

But a year and a half after this 1956 decision by the board interpreting *Detenbeck* as excluding varicose veins from any possibility of being held to be an occupational disease, this court

in March, 1958 held in *Wildermuth* that *Detenbeck* did not interdict all claims of occupational disease based on varicose veins. This court's memorandum stated (p. 912) " Here, as we have held [in *Vines*] the work activity was sufficiently distinctive and, upon the record, the condition was occupational in nature." Permission to appeal was denied by the Court of Appeals May 1, 1958.

It is true that although the decision in *Nussbaum* was made by the board before the decision in *Wildermuth* here had held that *Detenbeck* did not necessarily rule out varicose veins from the area of occupational disease, *Nussbaum*, nevertheless, was affirmed here November, 1958 after *Wildermuth* had been decided and after the Court of Appeals had denied permission to appeal in *Wildermuth*. But it is clear from the memorandum that this court treated the decision of the board in *Nussbaum* as a determination of an actual question of fact.

The decision of the board in this present case, however, demonstrates that it is not holding that the disease of varicose veins from which claimant suffered was not brought on by the long and continuous standing work over many hours a day for a number of years; but rather that the disease itself as a matter of law could not be an occupational disease.

The text of the board's finding on this subject is this: " With regard to the varicose veins, the medical evidence is in agreement that varicosities are due to an inherent congenital condition and are not caused by any occupation. There is considerable medical evidence however, that the occupation aggravated the condition. The Board finds on the basis of the record, that aggravation of a condition which is not occupational in nature is not an occupational disease within the meaning of the law."

The first sentence is a description of medical evidence as to causation, and it is not a definite finding related to this case, whether medically this work brought about, or did not bring about, the varicosities. The third sentence, that on " this record " the board finds that aggravation of " a condition which is not occupational in nature is not an occupational disease within the meaning of the law " is not the finding of any " fact " but a legal generalization relating to " a condition ".

When the decision of the board in this case is read carefully the inference seems very clear that the board, deeming itself precluded by *Detenbeck*, was holding as a matter of law that varicose veins could not in any circumstances be treated as an occupational disease, i.e., the aggravation of " a condition

which is not occupational in nature is not an occupational disease ".

Such a total exclusion of varicose veins as a matter of law would be inconsistent with our decisions and the board's own decisions in *Wildermuth* and *Vines*, where the same disease entity was held to be an occupational disease.

It might well be held by the board as a question of fact that a particular occupation by a particular claimant played no significant part in the development of a case of varicose veins; but that is something quite different. It could not consistently be held for one claimant that varicose veins as a disease entity is an occupational disease and for another claimant that it is not an occupational disease.

There is clear medical proof in the record that this type of employment had a " causal relationship with the disability " and that although varicose veins come from " an inherited weakness of the wall of the vein " and from valvular insufficiency, that the " effect " of the work claimant was doing would be that " he would develop these varicose veins due to his work in standing position and using his legs all the time."

The generalizations upon which the claim has been rejected by the board fail to make adequate disposition of the factual issues raised by this and other medical testimony in the record.

We do not hold, of course, that the board must find that this claimant suffered an occupational disease in his work, but in order to review this case adequately we should have the benefit of definite and unequivocal findings of fact as to whether or not the development of claimant's varicose veins was an effect of the work he did; and also whether or not his particular " work activity " was " sufficiently distinctive " to render the condition " occupational in nature ". Both these questions, and others implicit in them, were left open for resolution by the board in our decision in *Wildermuth* (p. 912), and they have not, in the case now before us, been factually resolved by the board.

The decision should be reversed on the law and the claim remitted to the board to make further findings of fact on the relationship, if any, of the employment to the claimant's disease.

Coon, Herlihy, Reynolds and Taylor, JJ., concur.

Decision reversed on the law and the claim remitted to the board to make further findings of fact on the relationship, if any, of the employment to the claimant's disease.